Case number 13-5693 U.S.A. v. Stephen McLaughlin, arguments not to exceed 15 minutes per side, Mr. Brandon for the appellant. Mr. Brandon. Good morning. May it please the court, my name is Andrew Brandon, I'm here today with Dumaca Shabazz, together we represent Mr. Stephen McLaughlin. I've already requested three minutes for rebuttal. Your honors, this case presents, frankly, a rather mundane set of facts, perhaps more befitting of a debt collection action involving a company that became unable to pay its outstanding dues on some financing agreements. It became criminalized when Mr. McLaughlin was alleged to have forged the names of several of his investors on certain guarantee agreements. Out of that, and also financing agreements. Mr. Shabazz. Is it that he forged them or that he used documents that he knew were forged? Mr. McLaughlin. The allegation counts one, and I believe one of the other counts, I'm forgetting the numbers, were certainly that he caused to be transmitted certain documents knowing that they bore false information. Mr. Shabazz. It makes a pretty big difference in light of your argument. Mr. McLaughlin. It does make a difference. The government has suggested that there are any number of ways that the jury could have found that he caused to be transmitted these documents. Our argument is simply that any one of those sort of roads to Dublin would require a number of sort of interpretive leaps on the part of the jury that the evidence just doesn't support. And so, for example, that somebody else forged the signature and he knew that it was forged and caused it to be sent. There's no evidence to support the knowing that... Mr. Shabazz. If it says he witnessed it and the jury could easily find that it's not the signature in question, you agree that both of those things occurred? Mr. McLaughlin. I agree that the jury could have easily found that it was not the signature of Nicholas Servin. Mr. Shabazz. And it could also find that your client signed the witness statement. Mr. McLaughlin. It could have found that the client signed the document. There's no evidence... Mr. Shabazz. Is it a witness? Does it say witness? Mr. McLaughlin. It certainly says witness, Your Honor. Mr. Shabazz. So a jury couldn't find that a witness to a document that was signed by somebody who wasn't supposed to be it? I mean, I don't see why the jury... I mean, jury might not find it, but I don't see why a jury couldn't find that. Mr. McLaughlin. Well, there's no evidence of the sort of contemporaneous signing of any one part of that other than, as you suggest, the fact that it says witness. But I understand we've simply argued... A jury might not buy that, but a jury could buy that, couldn't it? We've argued that there's too many inferences stacked on top of each other. What benefit does it gain him by setting aside count one? It's still the same guidelines and so forth, except for the one little penalty that has to pay, whether it's $50 or $100 or whatever. Mr. Shabazz. There may be $100, I think, these days. Yeah. I don't want to get too deep into appeal strategy between attorney and client, but it is... Mr. McLaughlin. Okay. Well, I just understand. You know, I realize most of the time when you appeal, you appeal the whole conviction, but you're just appealing count one, right? Mr. Shabazz. That's correct. On the substantial evidence, or sufficiency of evidence. That is correct. I'll turn now to the other issues, which involve the sort of murky connection between money judgments and the criminal law. And there we have two issues. We have a forfeiture issue and a restitution issue. And I emphasize the difference between these two just because here I think they've been a little bit conflated. And the circuit courts have routinely held that these are two different things. Restitution is about loss to victims. Forfeiture is about gain to the defendant, specifically ill-gotten gains. Are you appealing both issues or just one? Yes, Your Honor. Both issues. The restitution issue and the forfeiture issue. With respect to the forfeiture... Is it a plain error review for the restitution? The restitution is a plain error review. Nobody objected below. That's correct, Your Honor. On the forfeiture issue, this was a case where there was a specific forfeiture hearing at the end of the trial. The government waived the jury on that issue, or we waived, excuse me, the defendant waived the jury. But the government waived the right to present additional proof and just proceeded on the proof at trial. That proof, as our briefs have made clear, is somewhat limited. The question here is, are there proceeds? Are there proceeds that went to Mr. McLaughlin? As far as him actually benefiting, the evidence says that he got a dinner or two from his company. He had no salary. He went to either the Publix or the Winn-Dixie. His company got benefits. We dispute that, Your Honor. The district court have found that the company got benefits. Yes, but the district court had made a few factual errors in its findings. I want to read the language the district court concluded. It said, the record does not indicate that Mr. McLaughlin directly received the money. However, the corporation that he ran and was president of clearly benefited from the funds and he benefited indirectly in that regard. There are two words that are wrong in that conclusion. The words are money and funds. I think we've talked around this a bit in the briefs, but the truth here, Your Honor, is that there are no funds and there is no money in this case. The business model of these companies was that, I mean, I assure you- There was no loan? No. There was, Hertz Equipment Leasing doesn't cut you a check, and the government has cited the case of- What is it that was signed? Well, it's a financing document, but what Hertz does is they don't give you money. They give you a backhoe or a skid loader and say, see if you can make some money off of this and pay us later. You can't. If you defraud someone out of a backhoe, just speaking hypothetically and oversimplifying, you defraud somebody out of a backhoe, they give you the backhoe and you sell it, you don't have to pay that money? Well, again, so for one- Is that sort of quibbling to say it's a backhoe and not money? I mean, if the company gets- and so by- you're laughing at that. I'm assuming that that would be okay to forfeit that money that you sold the backhoe for. Well, I think there's two different issues there. Yes, in restitution, yes, there is a loss. Talk about forfeiture. Yes, I appreciate that. If Steve McLaughlin had gotten on the backhoe and ridden to Alaska and absconded with that, then yes- My hypothetical is bad guy, not your client, bad guy defrauds somebody out of a backhoe, gets the backhoe, and sells it, has a pot of money that they got for the backhoe, and then is prosecuted. I think that could be forfeited. That could be forfeited. Yes, Your Honor. Now, let's extend it a little bit. Instead of the bad guy doing it, the bad guy owns a company and the company did it. I think that- Well, it would be a cleaner case if the company were indicted. I understand that. It's an important distinction just because some of the cases that have reached the defendant or the individual, say, president or manager in that case, have made elaborate fact findings connecting them to the actual company, such as- That's not what you're arguing right now, or it is? Well, that's one component, but the fact scenario that Your Honor is playing out is, the difference here is that Hertz got their backhoe back. There's no- But it was worth a whole lot less than when they sold it, right? Or leased it. Was this a lease or- For the most part, it's a lease. I think the C&H document may have had- There's no question that all equipment, I think, went back to the- But it's like a car sold by a General Motors dealer. Anytime they get it back, it's worth a whole lot less than when they leased it out, right? Your Honor, I have no idea regarding any depreciation, but again, that's just another finding that is not in the record. There could well be that, but I say this to emphasize the point that EquipLink, the company, has no- I mean, they get this equipment. They try to rent it out. By all accounts, they fail spectacularly to make any money off of it. All they do is lose money, though that's simplifying it a little bit, but the equipment goes back. The only benefit is having possessed that equipment for however long, and then the district court said, at the government's behest, all of the losses, the losses to the rental companies are necessarily proceeds. The distinction between restitution and forfeiture, there are losses. They're paper losses, but those losses are real. We don't deny that, but to the extent there are losses, that's a restitution issue. Whether there's any actual proceeds here is another question entirely, and there just aren't enough facts on which to- Does it matter to your clients whether it's a judgment of restitution or forfeiture? I know they're different under law, but if he loses $60,000 in restitution, is that any different from the forfeiture? We've made both claims, and we'd like to fight both claims, but if he has a money judgment against him, it is likely not different. Some of the collection remedies may be different, but this- Different amount of money, or it's the same amount? Well, there's a slightly different amount of money, but the restitution amount added some attorney's fees. We're not contesting the amount. That's not what I'm asking. Let's take my bad guy's oversimplified example. You defraud somebody out of $60,000. Now you have the $60,000, and you're convicted of that. Do you have to pay $60,000 to the government and $60,000 to the victim? No, Your Honor. In truth, there can be some question of that if you have the two. In this case- In my example. In my example. You don't have to pay it twice, or you do? There can be cases in which you could, but the district courts have sort of caught wind of this, and at least in this case, Judge Campbell entered an order saying that the victim is entitled to collect twice. Where does it say that? I'm sure it's in there. I recall it from memory, but I don't even know if it's in there. When you say the government can't collect twice, they collect once and give it to the victim, and then they only take the difference for themselves? Is that how this works? In full candor, I don't believe the government is attempting to get a payday from this. Well, then your client then really has to win both of these arguments in order to get any relief. No, Your Honor, just in the sense that there are different ways of- Which one is greater? I forget. The restitution is a greater number. But it's a different criteria on appeal, because it's plain air, right? That's true. But I guess what I'm saying is if we upheld the restitution, would we have to reach the restitution? Did I say that right? If we held the restitution, would we have to reach the forfeiture? If you uphold the restitution, I think this court would still have to reach the forfeiture just because the laws allow different modes of collection, different remedies for the government to collect. I see. I see. I'm out of time.  May it please the Court. Catherine Booth on behalf of the United States. I'll address Mr. McLaughlin's arguments, beginning with sufficiency, briefly. The court had a few questions about whether the indictment charged Mr. McLaughlin with actually forging the signatures or just causing the signatures to be forged. He agreed it was the latter. And that's correct, Your Honor. And that's the government's position. If there are no further questions on sufficiency, then I'll move on to forfeiture and restitution. Thank you. With regards to the forfeiture, appellant argues that there were no funds in this case related to the forfeiture. And that's simply not the case. Hertz was in the business of renting equipment. And EquipLink, the defendant's company, would re-rent that equipment. EquipLink got the benefit of $44,000 worth of time and rental capacity of that equipment. And we know that EquipLink benefited or at least was making some sort of money because we know that in July and August of 2009, the defendant expended $35,000 of EquipLink's funds to buy out Mr. Serban's shares. So we know that at least at that point, there were funds left in the company. And those funds weren't used to pay for the debts that the defendant had caused the company to accrue based on the two counts in the indictment for which he was convicted. That's the company. That's not the defendant, right? Well, Your Honor. Is that right? Yes, Your Honor. But it's the government's position that essentially the company was the defendant. Is that like a piercing the corporate veil kind of thing? Yes, Your Honor. I don't know if it's technically under the case law of piercing the corporate veil. It's the same kind of idea. The same kind of idea, Your Honor. We shouldn't logically be looking more or less at the same kinds of things. That's right, Your Honor. Because if it was somebody that was really distinct, then forfeiture theory wouldn't work. That's right, Your Honor. And I think that had the case, in this case, had the funds gone to an innocent third party, as the defendant cites, the site... There's no indication that the corporation was not innocent. There's no indication, Your Honor. It's just whether he's the corporation or not. That's right, Your Honor. He claims he didn't own a controlling interest in this. Is that correct? Or how much did he own at the time these transactions occurred? The evidence at trial varied, Your Honor. He owned anywhere from 45 percent, which was a majority interest, to 23 percent. Wait, wait. 45 is a majority? It was a majority interest as far as... He was the majority shareholder. It wasn't a majority interest. But he had the largest share of anyone else. But there were other shareholders, right? There were other shareholders, Your Honor. There were. There's something that he raises that during the time of one of these transactions, he had already been fired as the president or CEO, right? And, Your Honor, the evidence in the record does not support that. The evidence in the record is that the transactions occurred between essentially January and October of 2009, and that includes both counts for which he was convicted. And he was... We have testimony from Mark Muscle that as of October of 2009, the defendant was still running the company because Mark Muscle stated that he left the company because he didn't like the way that the funds were being handled. What's the best case in support of your position there that he should have to give up the forfeiture because he was the biggest shareholder in the company? Your Honor, we cited in our brief United States v. Peters, which is a Western District of New York case from 2009, in which the defendant was convicted of bank fraud-related offenses, and he was a minority shareholder. In fact, he only had 13% of the stock of the companies. And yet the court found that forfeiture was appropriate because he controlled the company. He was the person who was in charge of hiring and firing decisions. He controlled the day-to-day company. He restructured the company. He made purchasing decisions. He transferred funds. And we have all of those facts in the case here. And the record in this case supports that the defendant was the one who was in control of the company. That's a district court case from New York? Yes, Your Honor. We don't have any court of appeals cases, I guess. Your Honor, we were unable to locate anything that was specifically on point for this particular issue. But we do think that although not controlling Peters should be instructive, a defendant should not be permitted to run a company, get the benefit. You know, there was evidence in the record that he did make withdrawals, that he made bank withdrawals, that he, you know, although it wasn't quantified, there was evidence that he made bank withdrawals and other expenditures for the company. And he was clearly the person acting on behalf of the company to negotiate contracts. Forfeiture is different from restitution. Forfeiture is what he has. I'm having trouble seeing how he has more than maybe these credit card charges as opposed to what the corporation has. Well, Your Honor, I think it's more than just what he has. Or ever had. But what he had the ability to have. And I think in this case, he had almost unfettered discretion to transfer the proceeds and to do whatever he wanted with the money that came into the company. And although we don't have a quantified expenditures in this case, we know that he had control. And if he had wanted to, he had the ability to take the money out of the company. And there's no evidence that he didn't take the money out of the company. There's just not evidence that he did. He didn't even take a salary, he says. Is that correct? That was what the testimony at trial was, Your Honor, that he did not take a salary. But Mr. Pruna's testimony was also that he made bank withdrawals from the company and other expenditures. So while the other employees who didn't have control over the company drew a salary, Mr. McLaughlin took whatever he wanted and whatever he needed from the company. And that was essentially what the evidence was at trial, that he had the ability to transfer funds on a whim. Do you agree with the contention of your opponent that these sort of net each other out? I mean, that you don't get double recovery? Or is it your position that you do get double recovery? Or whatever, maybe double recovery is a pejorative way of putting it. Well, Your Honor, I think the case law in the Sixth Circuit is that forfeiture and restitution are two separate animals, and that technically the government could get both. Now, practically, that's not how it works. Practically, the government collects something in forfeiture and turns it over to the victims in restitution. And Judge Campbell did indicate that he, although I don't remember anything in an order, he did indicate in this case he had no intent of allowing the government to get double recovery, that he was going to take steps to make the government. That's not in the record? He just indicated it outside the record? No, I believe it's in the record, but I don't believe it was in a formal order. Can you send us a 28-J, two sentence, directing us to where that is? Certainly, Your Honor. And if we were to agree with you on the restitution claim, is it necessary for us to reach the lesser forfeiture claim? Your Honor, I think that it is. And the reason is, as my opponent indicated, I do think that there are different methods of collection, and having an order of forfeiture and having an order of restitution are sort of, again, sort of two different animals. So while practically it may not make that much difference, practically the forfeiture may go to pay the restitution, I think legally speaking they are two separate issues. But when a person serves time, they take the money out for restitution, right, out of his accounts at the prison. Whereas you don't do that with forfeiture, right? I believe that's correct, Your Honor. I believe that's correct. In this case, the forfeiture is less than the restitution by about $5,000 and change. But are there any ways in which forfeiture can be obtained that would not apply to restitution? So the other difference doesn't... If there are certain things that you can do, the government can do to get the restitution, and then some additional things they can do to get... Did I say it wrong? If there are certain things they can do to get forfeiture and additional things they can do to get restitution, then that doesn't show that, in my hypothetical, we would need to reach the extra issue. It would only be if there are things that they can do to recover forfeiture rather than restitution. Did that make sense? It does. It does. Essentially, you're asking are there things that the government can do to get restitution that they can't do to get forfeiture. Right. I honestly don't know the answer to that, Your Question. I don't know the answer to your question, Your Honor. But I do know that our forfeiture unit handles the forfeiture collections. I do think they have some additional tools that we don't have when it comes to restitution. I see. Which I think is the reason that the government seeks forfeiture in a case like this, whereas, you know, otherwise I don't think that we would necessarily be interested. Well, forfeiture is like a disgorging of profits made, like Mr. Madoff had. But in this case, the company apparently doesn't have any assets, and we don't know about this defendant having assets, do we? We don't. I don't know, Your Honor, and I don't think it's in the record, the extent to which the defendant has assets. Although, you know, in sort of a hypothetical, I think that forfeiture in a situation like this is important because if the defendant opens up a company, and it's a fraudulent company, and he is essentially running the company, taking money out however much he wants, he could squirrel it all away in a bank account somewhere, and then the company could go bankrupt. Now, I'm not saying that the record supported that in this case, but just hypothetically, that would lead us to seek forfeiture from the defendant. Now, remember, the forfeiture order in this case is not against the company. It's against the defendant himself. And our position is that he was the one who received the benefits, you know, when the company received the benefits. Because he could have got it from the company. That's right. There's not really much in the record to say that he did get it from the company. He just could have got it from a presumably innocent company, right, with shareholders, 55 percent of whom were presumably innocent. That's correct, Your Honor. He could have gotten it from the company. Whether the company was innocent or not innocent or indicted or not indicted is not really relevant to our analysis of whether he had the ability to pull the funds out of the company. Well, if it had been, your forfeiture argument would be a lot easier. Yes, Your Honor. Now, with respect to one other thing on forfeiture, the district court found that the corporation benefited and thereby the defendant benefited. And we would argue that that finding is subject to clear error review while, you know, obviously the question whether the facts support the forfeiture order or are sufficient to support the forfeiture order would be a de novo review by this court. They seem to say, I mean, you could treat it as a question of fact, but the actual language makes it sound like one is automatically the other. I don't have it right in front of me. Your Honor, I believe record number 78, page 696, is where the district court made the forfeiture finding, that the corporation that the defendant ran and was president of clearly benefited from the funds and he benefited indirectly in that regard. So we would ask this court to treat that as a finding of fact that's reviewed for clear error. With respect to restitution, as I believe the court pointed out, this is a plain error review since there was no objection made below. And, you know, Hertz and the losses to Hertz and C&H clearly stemmed from actions by the defendant while he was operating the company and they clearly flowed from the contracts. And the specific record sites are in our brief, but if anyone has any questions, I'd be happy to answer them. Did he have retained counsel below? No, Your Honor. Public defender all the way? Yes, Your Honor. Well, I think it's kind of a useless gesture by the government if you're trying to get forfeiture if a guy qualifies for public defender. He must have had some idea that there's an offshore bank account or Swiss bank account or something. Well, I can't speak to that, Your Honor, but that is certainly possible in any case. Sure. It just doesn't happen too much, I think, when you have somebody that qualifies for a federal public defender and you're seeking forfeiture on them. Well, there is always the possibility of a bank account that the government doesn't know about, Your Honor. If there are no further questions. Thank you. Thank you. May it please the Court. I'll just make two quick points on rebuttal. First, factually, the suggestion that the Court's findings are entitled to clear error deference. The one factual finding we seem to have here is that Mr. McLaughlin benefited indirectly in regards to how his company benefited. That's straight out of the statute, out of Section 928. He's just citing the statute. Exactly. I think that's right. What do you do with the argument that it was like a pool that he could have used even if he didn't use it? I mean, again, it's a pool of skid loaders and backhoes. There's not a pile of money he's diving around in. But also, I just... I guess if, I mean, that's just getting back to whether it's backhoes or cash. But if some hypothetical bad guy defrauds money, but most of it goes to some third party, and he never sees it, you would say no forfeiture unless that third party was able and willing to give the fraudster any of it that he wanted whenever he wanted it. Are you with me? I am, and I think... Is that the case, that in that case you would allow forfeiture even though there's no evidence that they ever did go to the third party and say give me the money? I'm not saying that my bleeding heart would necessarily allow it in that case, but I could imagine it in that case, and I think the Peters case is a case like that. And I think it's actually a very instructive case just because the district court opinion that they cite is just that. It's a district court making factual findings, and they're voluminous, and they have details like that, that he and his wife owned 98% of the company. There were two... His sister-in-law owned the other 1%. He paid himself a six-figure salary that was increasing every year. I mean, things like that where you have voluminous factual... That just goes to whether there was control. If there was control, apart from your bleeding heart, that seems like then forfeiture would be appropriate. Compelling facts about... Because it was not on the theory that even though he didn't possess it in some sense, he always had the opportunity of possessing it, and so therefore it, in effect, was his. Yes, Your Honor, but not just control but also actual proceeds, and I think that just gets us back to the whole problem where there has to be something. All right. Thank you, Your Honors. Case will be submitted. Please call the next case.